UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSHUA POSTL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 4:22-CV-1122 RLW |
| ) | |
| DIVERSIFIED RECOVERY ) | |
| BUREAU LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant Diversified Recovery Bureau LLC's Motion for Summary Judgment. (ECF No. 19). For the reasons set forth below, the Court will grant in part and deny in part Defendant's Motion.

**Background**

This suit arises from Plaintiff Joshua Postl's allegations that Defendant unlawfully attempted to collect on his outstanding debt. In his Complaint, Plaintiff asserts violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"), and the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 *et seq.*, ("MMPA"). (ECF No. 1). In his response to Defendant's summary judgment motion, Plaintiff expresses his intent to abandon his claims under sections 1692d, 1692e, and 1692f of the FDCPA. (ECF No. 22). The Court will therefore grant Defendant summary judgment on those claims.

Plaintiff's remaining claims arise under section 1692c(a)(1) of the FDCPA, which prohibits debt collectors from communicating with consumers at inconvenient times, and the MMPA. Plaintiff's claims under these sections are premised on his allegations that Defendant called his

cellular telephone (hereinafter, "phone") before 8:00 a.m.[1] on two occasions: on August 31, 2022 at 7:22 a.m., and on September 30, 2022 at 6:51 a.m. The record demonstrates the following relevant facts.

Defendant maintains records of its collectors' communication efforts. These records include Account Notes and a Dialer Log, which reflect manual and auto-dialed telephone calls. (Def.'s Statement of Proposed Facts ("SUMF") ¶ 5, ECF No. 20). On or about March 10, 2022, Defendant acquired Plaintiff's debt account for servicing. (*Id.* at ¶ 3). Defendant's Dialer Log shows that on August 31, 2022, Defendant placed an auto-dialed call to Plaintiff's phone at 9:21 a.m. The collection agent who pre-recorded the message utilized in the call was on leave that day. This call was not reflected in Defendant's Account Notes. (*Id.* at ¶¶ 9-10, 13-15). Defendant's Account Notes reflect that on September 30, 2022, Defendant placed a call to Plaintiff's phone at 8:51 a.m. The collection agent who manually placed the call, upon arriving at Defendant's work facility that day, initially accessed the employee network at 7:56 a.m. (*Id.* at ¶¶ 11, 16-21). The Dialer Log also reflects a call placed to Plaintiff on this date at 8:50 a.m. (SUMF, Ex. Ryan B at 3). According to the deposition testimony of Defendant's Chief Operating Officer, Scott Ryan, calls made through the dialer campaign are not manually entered in the Account Notes, because a collector does not initiate the attempted contact and therefore does not notate the account. (SUMF, Ex. Little D at 31-32).

During his deposition, Plaintiff testified to receiving the two calls in question. According to Plaintiff, he did not answer the calls, but instead listened to the voicemail messages left by Defendant's collectors. Plaintiff further testified that he did not retain the original voicemail messages and was unsure what happened to them when he switched phone carriers, but that he instead possessed recordings of the original voicemail messages. (SUMF, Ex. Little C at 24, 46-

---

[1] All times referenced are Central Standard Time.

48, 61-62). When questioned about the actual damages he sustained in connection with the calls he received prior to 8:00 a.m., Plaintiff testified, in part: "[Y]ou just don't expect a phone call before 8:00 a.m. unless its an emergency. So I'm getting a phone call, waking up, seeing it's not my, you know, mother telling me something has happened or someone had died. So that, you know, little heart skipping a beat, our blood pressure, and—and then, you know, migraines afterwards." (*Id.* at 53-54).

Defendant's records do not show any calls made to Plaintiff's phone on either date prior to 8:00 a.m. (SUMF ¶ 12). Plaintiff's phone records from his service carrier, Mint Mobile, do not show any calls placed by Defendant to Plaintiff—before 8:00 a.m. or at any other time—on the dates in question. (SUMF, Ex. Little E). As relevant, the Account Notes show that on April 19, 2022, two phone calls were placed by a collector to Plaintiff's phone less than a minute apart. (SUMF, Ex. Ryan A at 12). The Dialer Log reflects a single call placed to Plaintiff at this time. (SUMF, Ex. Ryan B at 2).

In support of its summary judgment motion, Defendant argues that Plaintiff did not suffer a concrete injury sufficient to confer Article III standing. Defendant further argues that Plaintiff's section 1692c(a)(1) and MMPA claims fail on the merits because there is no admissible evidence showing Defendant placed any phone calls to him prior to 8:00 a.m. on either date in question.[2] (ECF No. 19).

**Legal Standard**

The Court may grant a motion for summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

---

[2] Defendant further argues for preclusion of the purported recordings Plaintiff produced of the original voicemail messages left by Defendant's collectors, as well as sanctions, on the basis of spoilation. (ECF No. 19 at 8-10). The Court finds consideration of the recordings unnecessary and declines to address Defendant's spoilation argument at this time.

3

there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). The substantive law determines which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Only disputes over facts that might affect the outcome will properly preclude summary judgment. *Id.* Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

A moving party always bears the burden of informing the Court of the basis of its motion. *Celotex Corp.*, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 247. "'The nonmoving party may not rely on allegations or denials,' but rather 'must substantiate [his] allegations with sufficient probative evidence that would permit a finding in [his] favor on more than mere speculation or conjecture.'" *Carter v. Pulaski Cnty. Special Sch. Dist.*, 956 F.3d 1055, 1059 (8th Cir. 2020) (quoting *Ball v. City of Lincoln, Neb.*, 870 F.3d 722, 727 (8th Cir. 2017) (cleaned up)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255. The Court's function is not to weigh the evidence but to determine whether there is a genuine issue for trial. *Id.* at 249. "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not

those of a judge.'" *Torgerson*, 643 F.3d at 1042 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## Discussion

### A.  Article III Standing

Article III of the Constitution limits federal courts' jurisdiction to cases or controversies. Standing is "an essential and unchanging part" of this requirement. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992); *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  To establish standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338 (citations omitted). To establish an injury in fact, a plaintiff must show an injury that is "concrete and particularized," even in the context of a statutory violation. *Id.* at 340-41. "For standing purposes…an important difference exists between (i) a plaintiff's statutory cause of action to sue a defendant over the defendant's violation of federal law, and (ii) a plaintiff's suffering concrete harm because of the defendant's violation of federal law." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426-27 (2021).  Concrete harms can be either tangible or intangible.  *Id.* at 425.

Plaintiff here asserts both tangible and intangible harms.  The Court finds, however, that it need not address Plaintiff's purported intangible injuries, because it finds his tangible injuries alone sufficient to establish concrete harm for standing purposes.  "As *Spokeo* explained, certain harms readily qualify as concrete injuries under Article III." *TransUnion*, 594 U.S. at 425.  "The most obvious are traditional tangible harms, such as physical harms." *Id.* "If a defendant has caused physical injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III."  *Id.*

Plaintiff's deposition testimony demonstrates that, because of the phone calls made to him

by Defendant's collectors prior to 8:00 a.m., his heart skipped a beat, he experienced heightened blood pressure, and he suffered migraines. Contrary to Defendant's argument, these physical manifestations of distress go beyond general statements of anxiety. *See Drechen v. Rodenburg, LLP*, No. 22-705, 2022 WL 17543056, at *4 (D. Minn. Dec. 8, 2022) (finding headaches, digestive orders, and chronic pain physical harms that can rise to level of concrete harm; collecting cases); *Billups v. I.C. Sys., Inc.*, No. 21 C 1018, 2022 WL 3684572, at *5 (N.D. Ill. Aug. 25, 2022) ("[T]his Court has recognized that distress so powerful as to cause 'physical manifestations' may rise to the level of a concrete injury, even if those physical manifestations are relatively slight."); *Gilbert v. TrueAccord Corp.*, 608 F. Supp. 3d 656, 664 (N.D. Ill. June 23, 2022) (plaintiff had standing when debt collection activity made her so angry that she was shaking; magnitude of injury does not matter). The Court therefore finds that Plaintiff has standing under Article III to proceed on his remaining claims under section 1692c(a)(1) and the MMPA.

### B. Claims under Section 1692c(a)(1) and the MMPA

The FDCPA was enacted "to eliminate abusive debt collection practices, to ensure that debt collectors who abstain from such practices are not competitively disadvantaged, and to promote consistent state action to protect consumers." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 577 (2010) (citing 15 U.S.C. § 1692(e)). The statute "regulates interactions between consumer debtors and debt collectors," *id.*, and it includes a prohibition against communicating with a consumer in connection with the collection of any debt:

> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location;

15 U.S.C. § 1692c(a)(1). To prevail on a FDCPA claim, a plaintiff must prove that he is a consumer; that the defendant is a debt collector; that there was an attempt to collect a debt; and

6

that the defendant violated, by act or omission, a provision of the FDCPA.  *Campbell v. Credit Prot. Ass'n, L.P.*, No. 4:12CV00289, 2013 WL 1282348, at *4 (E.D. Mo. Mar. 27, 2013) (citation omitted).

The MMPA similarly prohibits the "[t]he act, use or employment of… unfair practice…in connection with the sale or advertisement of any merchandise in trade or commerce."  Mo. Rev. Stat. § 407.020.1.  Under the MMPA, "[m]erchandise" includes "any objects, wares, goods, commodities, intangibles, real estate or services."  Mo. Rev. Stat. § 407.010.4.  The protections of the MMPA apply to loan collection practices inasmuch as such practices are "in connection with" the "sale" of a loan.  *Conway v. CitiMortgage, Inc.*, 438 S.W.3d 410, 415-16 (Mo. banc 2014).

The determining issue before the Court is whether there exists a genuine dispute regarding the occurrence of the two phone calls in question.  Defendant urges the Court to disregard Plaintiff's testimony as self-serving and as contradicted by Defendant's and Mint Mobile's records.  Defendant contends these records show beyond dispute that no calls were placed by Defendant to Plaintiff prior to 8:00 a.m. on either date in question.  (ECF No. 19).  Plaintiff counters that his testimony cannot be discounted merely because it is self-serving, and he challenges the reliability of the records submitted by Defendant.  In suggesting that Mint Mobile's records don't provide a "complete picture," Plaintiff cites the absence of any calls from Defendant in the phone carrier's records on the relevant dates.  Plaintiff further questions the accuracy of Defendant's own recordkeeping procedures, suggesting the Account Notes omit calls reflected in the Dialer Log and vice a versa.  Plaintiff attributes these omissions to discrepancies in Defendant's records and suggests a reasonable inference could be drawn that such records are incomplete.  (ECF No. 22).  In reply, Defendant asserts that because Plaintiff did not produce his own phone records from Mint Mobile, he cannot interpret those provided by Defendant to create

7

a genuine issue of fact. With respect to its own records, Defendant argues that the lack of duplicate entries in the Account Notes and Dialer Log does not support an inference of fallibility. According to Defendant, "if a call was placed manually, and not through the use of a Dialer, it is unclear why a manually dialed call would appear on the Dialer Log." (ECF No. 24 at 12-13).

Initially, the Court reiterates its function at this stage is not to weigh the evidence, *Anderson*, 477 U.S. at 249, and it is inappropriate for the Court to make credibility determinations, *Torgerson*, 643 F.3d at 1042. The Court finds that the record before it does create some mild confusion regarding Defendant's recordkeeping process. According to Defendant, calls reflected in the Dialer Log should not appear in the Account Notes and vice a versa; yet, on two occasions—April 19 and September 30, 2022—there appear to exist possible duplicate entries. The Court does not find these discrepancies sufficient to raise a plausible inference of record incompleteness, as suggested by Plaintiff. It does, however, lend itself to a possible inference of record inconsistency on the part of Defendant, or at the very least a lack of clarity regarding Defendant's recordkeeping process. The Court also agrees with Plaintiff regarding Mint Mobile's records and finds that they do not blatantly contradict Plaintiff's version of the events. A juror could reach the conclusion that Mint Mobile's records—which show no calls by Defendant to Plaintiff at any time on the relevant dates—fail to provide a complete picture, particularly when they seemingly contradict Defendant's own records.

In light of the foregoing, the Court concludes that Plaintiff's deposition testimony, although self-serving, should be considered at this juncture. *See Stewart v. Rise, Inc.*, 791 F.3d 849, 860 (8th Cir. 2015) (Federal Rules of Civil Procedure contemplate use of, inter alia, depositions as permissible forms of evidence at summary judgment stage); *see also Brown v. IC System*, No. 16 C 9784, 2019 WL 1281972, at *4 (N.D. Ill. Mar. 20, 2019) (fact that plaintiff's claims relied on self-serving deposition testimony was no defect at the summary judgment stage); *Black v. AFNI,*

*Inc.*, No. 15-CV-1176, 2018 WL 3546193, *5 (D.N.J. July 23, 2018) (finding Plaintiff's testimony sufficient to create genuine dispute of fact regarding number of calls, even in face of contrary documentary evidence; collecting cases).  Given Plaintiff's testimony that he received two calls prior to 8:00 a.m. on the dates in question, the Court finds there exists a genuine issue of material fact as to the occurrence of the two calls.  Plaintiff has therefore presented sufficient evidence at this stage to overcome summary judgment on his remaining claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment [ECF No. 19] is **GRANTED in part** and **DENIED in part**.

**IT IS FURTHER ORDERED** that Plaintiff's claims under 15 U.S.C. §§ 1692d, 1692e, and 1692f are **DISMISSED with prejudice**.

_____
**RONNIE L. WHITE**
**UNIED STATES DISTRICT JUDGE**

Dated this   23rd   day of January, 2024.